# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**VLADIMIR WALTON,**

    Petitioner,

  Case No. 10-C-117

  -vs-

**JAMES SCHWOCHERT, Warden,**
**Dodge Correctional Institution,**

    Respondent.

# DECISION AND ORDER

  The petitioner, Vladimir Walton, was convicted in Racine County of robbing a hotel with threat of force. Walton received a 12-year prison sentence with eight years' supervision. In response to his attorney's no-merit report, Walton exhausted claims for ineffective assistance of counsel, which he raises now in the context of his petition for habeas relief under 28 U.S.C. § 2254.

  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the review of state court convictions in federal habeas corpus proceedings. A federal court may grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if the state court either incorrectly laid out governing United States Supreme

Court precedent or decided a case differently than a factually and materially indistinguishable Supreme Court case. § 2254(d)(1). A state court unreasonably applies Supreme Court precedent when it correctly identifies the governing legal rule but unreasonably applies it to the facts of a case; unreasonably extends a legal principle from the Supreme Court's precedent to a new context in which it should not apply; or unreasonably refuses to extend that principle to a new context in which it should apply. § 2254(d)(1); *Ellison v. Acevedo*, 593 F.3d 625, 632 (7th Cir. 2010).

Under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner must demonstrate that counsel's performance was deficient as an objective matter – namely, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Raygoza v. Hulick*, 474 F.3d 958, 962 (7th Cir. 2007) – and that counsel's deficient performance prejudiced the defense so that there is a reasonable probability that the outcome would have been different without the deficiency. *United States v. Malone*, 484 F.3d 916, 919 (7th Cir. 2007). Pre-AEDPA, this was a deferential standard. Post-AEDPA, a habeas petitioner faces an even more difficult task. "*Strickland* builds in an element of deference to counsel's choices in conducting the litigation; § 2254(d)(1) adds a layer of respect for a state court's application of the legal standard." *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997).

The court of appeals did not unreasonably apply the *Strickland* standard to Walton's claims. Moreover, the Court agrees that Walton's attorney did not render ineffective assistance. For example, Walton complains that his attorney did not present an alibi defense

through the testimony of David Browne. Browne answered the door at the residence where Walton was found hiding the night of the robbery. Browne testified for the prosecution that Walton left the residence at approximately 9 p.m. and did not return until 11:30 p.m.. Therefore, Browne could not serve as an alibi for Walton because the hotel was robbed during that time period at 10:30 p.m.. Walton also argues that his attorney should have obtained video surveillance tape in an attempt to demonstrate that he was buying liquor at the time of the robbery. The testimony at trial established that the liquor store where Walton bought liquor the night of the robbery closed at 9 p.m.. Counsel was not ineffective for failing to pursue an alibi defense.

Even apart from the lack of deficient performance, the circumstantial evidence of Walton's guilt was overwhelming. At trial, the hotel clerk testified that the robber was armed and was wearing a black leather jacket, dark sunglasses, a wool hat, what appeared to be a scarf around his neck and face, and gloves. After taking cash from the clerk, the robber ran in the direction of a water filled ditch. The Knights Inn motel parking lot was on the other side of the ditch. Police officers testified that wet footprints were found in the Knights Inn parking lot leading away from the robbed hotel to a parking spot. A DNA expert testified that Walton's profile matched one of the two DNA profiles on the cigarette butt found where the footprints ended. A police officer responding to the robbery spotted a white Buick LaSabre leaving the Knights Inn parking lot and took the license plate number. The officer observed that a black male with short cut hair was driving and was the only occupant of the car. At trial, the observing officer identified Walton as the driver. The car was later

stopped and officers observed that the floor on the driver's side was extremely wet and puddled. The occupants of the car indicated that an individual named Michael Wells loaned them the car. Wells told the police that he let Walton drive the car earlier that night. The police went to the residence where Wells last saw Walton. They discovered Walton hiding in the attic space of that residence. Walton's black jean pants and shoes were wet. The tread on Walton's shoes matched the tread on the footprints observed leading from the hotel. The officers found wet socks and a leather jacket with wet arms. The sunglasses identified by the hotel clerk were recovered from the kitchen. A large number of quarters were taken in the robbery, and police found a blue jean jacket with a large number of quarters in the pocket. A black cap and a pair of black leggings tied like a scarf were found in the white car Wells loaned to Walton. In light of all of this evidence, it cannot be said that there is a reasonable probability that the outcome of Walton's trial would have been different even in light of counsel's strategic errors, such as they were.

Walton brings a variety of other claims, none of which have any merit. He argues that the court of appeals was incorrect when stating that his DNA profile matched the cigarette butt and that the liquor store closed at 9 p.m.. There is evidence supporting both assertions in the record. Therefore, the court of appeals' ruling was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).

Pursuant the Rules Governing Section 2254 Cases, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a).

-4-

The Court will not issue a certificate of appealability because Walton failed make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Jurists of reason could not disagree that the state court correctly applied the *Strickland* standard to Walton's claims. The issues presented by Walton's petition are not deserving of encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Walton's motion to appoint counsel [D. 13] is **DENIED**; and

2. Walton's petition for a writ of habeas corpus is **DENIED**.

Dated at Milwaukee, Wisconsin, this 25th day of October, 2010.

**SO ORDERED,**

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**